BOARD OF EDUCATION, TOWNSHIP OF LITTLE EGG HAR-
BOR, APPELLANT, v. BOARDS OF EDUCATION OF THE
TOWNSHIP OF GALLOWAY, CITY OF ATLANTIC CITY,
TOWNSHIP OF MARLBORO, FREEHOLD REGIONAL
HIGH SCHOOL DISTRICT AND THE DIVISION OF
YOUTH AND FAMILY SERVICES, DEPARTMENT OF IN-
STITUTIONS AND AGENCIES, STATE OF NEW JERSEY,
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 21, 1975—Decided May 16, 1975.

(1)

Before Judges MICHELS, MORGAN and MILMED.

*Mr. James L. Wilson* argued the cause for appellant.

*Mr. William J. Mehr* argued the cause for respondent Board of Education of the Freehold Regional High School District (*Messrs. Cerrato, O'Connor, Braelow & Mehr*, attorneys; *Mr. Dominick A. Cerrato* on the brief).

*Ms. Mary Ann Burgess,* Deputy Attorney General, argued the cause for respondents State Board of Education and Division of Youth and Family Services (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel, *Ms. Burgess* on the brief).

*Messrs. DeMaio & Yacker,* attorneys for respondent Marlboro Township Board of Education, submitted a brief (*Mr. Vincent C. DeMaio,* of counsel).

*Mr. Lawrence Milton Freed,* attorney for respondent Board of Education of the City of Atlantic City, submitted a statement in lieu of brief.

*Mr. Walter S. Jeffries,* attorney for respondent Board of Education of the Township of Galloway, submitted a statement in lieu of brief.

PER CURIAM. The Board of Education of the Township of Little Egg Harbor appeals from a final decision of the State Board of Education which affirmed a decision of the Commissioner of Education.

The basic issue involved here is whether the Board of Education of the Township of Little Egg Harbor, or one of the named respondent school districts, is responsible for the payment of tuition for A. S., a minor enrolled in a program of special education in a nonpublic residential school (The Collier School) in Marlboro Township.

The essential facts are not in dispute. In December 1969 the minor, then almost 14 years of age, was adjudicated a juvenile delinquent by the Juvenile and Domestic Relations Court of Atlantic County. On the court's recommendation that the parents of the child cooperate with the then Bureau of Childrens Services[1] in finding suitable placement for their

---

[1] Now known as the Division of Youth and Family Services in the Department of Institutions and Agencies.

child, they executed an agreement with the Bureau on December 18, 1969 which included their request that the Bureau place the child "in foster care or a group setting" until they could assume their full responsibility, it being understood that they were not surrendering their "parental rights." The agreement also provided that in requesting placement of the child the parents understood that the Bureau "will assume responsibility" for the child in accordance with the provisions of *N. J. S. A.* 30:4C–1 *et seq.* The care and custody of the child were thus surrendered to the Bureau by the parents. The child was then placed by the Bureau in a foster home in Pleasantville and enrolled in the public schools there. The child's mother resides in Atlantic City; her father in Galloway Township. On January 8, 1970 the father executed an acknowledgement of responsibility for the support of the child, agreeing to contribute $80 a month toward her care and maintenance so long as she would remain under the jurisdiction of the Bureau. *N. J. S. A.* 30:4C–29.1.

On January 22, 1970 the child was placed in a second foster home in Little Egg Harbor. The Board of Education of Little Egg Harbor operates public school facilities for grades kindergarten through six and is a sending district to the Southern Regional Junior-Senior High School which includes grades seven through twelve. The child was enrolled in the eighth grade of the Southern Regional High School District on January 26, 1970 and remained there for the balance of the 1969–70 school year. Her tuition was paid by the Board of Education of the Township of Little Egg Harbor since her foster home was located in that sending district. *N. J. S. A.* 18A:38–1(d) and *N. J. S. A.* 18A:38–19. During the summer of 1970, while the child was residing in the foster home in Little Egg Harbor, the Bureau of Childrens Services, on its own initiative, secured a psychological evaluation of her. Placement in a residential school which could provide a structured environment and therapy was indicated. On September 1, 1970 the child left the

foster home without permission. She voluntarily surrendered and was placed in the Ocean County Juvenile Shelter in Toms River. While there she was evaluated by a child study team at the request of the Bureau of Childrens Services and with the cooperation of the Little Egg Harbor School District.[2] On December 14, 1970 she was classified as emotionally disturbed and socially maladjusted and recommended for residential placement in a suitable special education program in accordance with *N. J. S. A. Title* 18A, *Chapter* 46. On January 4, 1971 the Bureau secured her enrollment as a ninth grade pupil in such a special education program in The Collier School, a residential, nonpublic school, in Marlboro Township.[3] She successfully completed the ninth grade and was promoted to the tenth grade on June 18, 1971. The Board of Education of the Township of Little Egg Harbor petitioned the Commissioner of Education requesting a determination as to which local school district involved with the child was responsible for her tuition at The Collier School. It contends that "According to the facts of this case, the domicile of A. S. can only be that of her father." We disagree.

*N. J. S. A.* 18A:46–14 states in pertinent part that

Whenever any child shall be confined to a hospital, convalescent home, or other institution in New Jersey or an adjoining or nearby

---

[2]The Board of Education of the Township of Little Egg Harbor applied for placement by it of the child as "a Handicapped Pupil in a Non-Public School in Accordance with Chapter 46, Title 18A, New Jersey Statutes." On its application to the State Department of Education, Division of Curriculum and Instruction, Office of Special Education Services, the "School Year" is designated as "1970–71"; "Little Egg Harbor" is designated as the "Sending District" and "Collier School" as the "Receiving Non-Public School." Alongside the item "If Residential Placement — Costs Assumed by" there appears the following: "Little Egg Harbor conditionally."

[3]The Marlboro School District is a constituent of the Freehold Regional High School District and sends its pupils for grades nine through twelve to this regional school.

state and is enrolled in an education program approved under this article, the board of education of the district in which the child is domiciled shall pay the tuition of said child in the special education program.

After reviewing relevant statutes and decisional law, the Acting Commissioner of Education determined that

* * * domicile shall be the last local school district where the child resided for a substantial period of time with a parent, guardian, or a person acting in *loco parentis*, or in a foster home, other than a public or private residential institution, where the child was statutorily entitled to attend the public schools of the district. "Substantial" shall mean six months or more. If the child did not reside in any such district for a period of six months, the district of domicile shall be that of longest residence.

In accordance with this standard the Commissioner found and determined that the Board of Education of the Township of Little Egg Harbor was responsible for the payment of tuition for the program of special education being received by the child under *N. J. S. A.* 18A:46–14, Little Egg Harbor school district being the last local school district in which the child had resided for a substantial period of time prior to her placement in The Collier School. The Commissioner, accordingly, ordered that the Board of Education of the Township of Little Egg Harbor "pay the 1970–71 tuition fee" for the child "forthwith, and arrange with the institution to pay the tuition fees for the school years thereafter until her special education is naturally terminated." The State Board of Education affirmed the decision of the Commissioner for the reasons expressed therein.

There is no question but that the actions of the Commissioner and the State Board of Education were within their statutory authority. *N. J. S. A.* 18A:6–9, 18A:6–27, 18A:6–28, 18A:6–29. The decision of the administrative agency is, accordingly,

* * * entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbi-

trary, capricious or unreasonable. * * * [*Thomas v. Morris Tp. Bd. of Ed.*, 89 *N. J. Super.* 327, 332 (App. Div. 1965), aff'd 46 *N. J.* 581 (1966)]

See also, *Quinlan v. North Bergen Tp. Bd. of Ed.*, 73 *N. J. Super.* 40, 46–47 (App. Div. 1962).

█ From our review of the record in this case we are satisfied that no such showing has been made. The actions of the State Board and Commissioner are entirely reasonable. They represent a proper application of relevant statutory provisions and sound educational policy. Appellant's suggestions to the contrary are without merit. See Annotation, "Determination of residence or nonresidence for purpose of fixing tuition fees or the like in public school or college," 83 *A. L. R.* 2d 497 (1962); *Worden v. Mercer Cty. Bd. of Elections*, 61 *N. J.* 325 (1972); *In the Interest of G. H.*, 218 *N. W.* 2d 441 (N. Dak. Sup. Ct. 1974); *N. J. S. A.* 30:4C–26; *N. J. S. A.* 18A:1–1, 18A:38–1, 18A:38–2, 18A: 46–6 *et seq.*

We are in accord with the statement contained in the brief submitted by the Attorney General that the decision of the Commissioner of Education in this case

* * * results in the selection of a jurisdiction which has the most substantial connection with the greatest interest in A. S. To have found otherwise would have resulted in a rule which would fluctuate with the vagaries of an unstable and volatile family situation which was, in fact, temporarily severed; or which would place responsibility upon a local school district which had no contact with A. S. apart from geographical involvement with the private school in which she was placed.

The decision of the State Board of Education is affirmed.

MORGAN, J. A. D. (dissenting). I find myself in disagreement with my colleagues because I am unable to discern a nexus between A. S., a 13-year-old girl, and her former foster parents resident in Little Egg Harbor sufficient to characterize that municipality as the infant's domicile.

The undisputed facts establish that A. S. was placed with foster parents in Little Egg Harbor with whom she resided from January 1970 through August 1970. During that relationship and while she was residing with her foster parents in Little Egg Harbor she attended the Southern Regional High School at Manahawkin, which serves the students of Little Egg Harbor, and that municipality bore the expense of her tuition in compliance with the requirements of *N. J. S. A.* 30:4C–26 which, in pertinent part, provides:

Whenever the Bureau of Childrens Services shall place any child, as provided by this section, in any municipality and county of this State, the child shall be deemed a resident of such municipality and county for all purposes, and he shall be entitled to the use and benefit of all health, educational, recreational, vocational and other facilities of such municipality and county in the same manner and extent as any other child living in such municipality and county.

The foster parent-child relation ceased, however, at the end of August 1970 when A. S. ran away from her foster parents in Little Egg Harbor. She has never returned to them. Instead, she was placed for a few months stay at the Ocean County Children's Shelter and the matter was referred to the Ocean County Juvenile and Domestic Relations Court, which conducted a hearing on October 7, 1970. On December 14, 1970 her classification as emotionally disturbed and socially maladjusted was approved on behalf of the Commissioner of Education, and on January 4, 1971 she was admitted to The Collier School, a residential school in the Township of Marlboro in the County of Monmouth, approved by the Bureau of Children's Services and by the State Board of Education, where she was to receive special education within the meaning of *N. J. S. A. Title* 18A, *Chapter* 46. Nothing in the record suggests any continuing relationship of any kind between A. S. and her former foster parents or any intention on the part of the Bureau of Children's Services, or indeed the child herself, to return to the care and custody of her former foster parents she had previously forsaken.

The statements contained in the majority opinion in footnote 2 are susceptible of being misread since it may be inferred therefrom that it was the school district embracing Little Egg Harbor which sought placement of A. S. as a handicapped child in the Collier School. Although Little Egg Harbor did complete a form entitled "Application for Placement by a Board of Education of a Handicapped Pupil in a Non-Public School in accordance with Chapter 46, Title 18A, New Jersey Statutes,"[1] it did so only to implement the decision of the Bureau to place the child in the Collier School. The "application" was completed on December 14, 1970, months after the child had fled Little Egg Harbor, after the psychological evaluation from which the decision to make this placement was derived, and reflected, by use of the word "conditional," that the Little Egg Harbor school district was protecting the imposition of the burden of tuition costs attendant to this placement. The brief of the Attorney General, who has possession of the entire confidential file of A. S. which has not been revealed to us, notes that during the first half-year at Collier "tuition expenses for A. S. were paid by Little Egg Harbor, although assumption of this cost was expressly undertaken to facilitate her placement, *not* as a concession of responsibility." Within days after the entry of A. S. into the Collier School and within weeks after the application was completed Little Egg Harbor filed its petition seeking a declaration of its nonresponsibility for A. S.'s tuition at the Collier School.

Hence, the record is reasonably clear that it was the Bureau, not Little Egg Harbor, which placed A. S. in the Collier School. Moreover, the psychological evaluation of A. S. secured by Bureau of Children's Services in August

---

[1]The application had been approved by the "Regional Child Study Team." At the bottom of the application is the notation that "All non-public school contracts are limited to the school year covered by approval and subject to continued legal residence of the parent or legal guardian."

1970 while A. S. was still resident in Little Egg Harbor, was made, according to the decision of the State Board of Education, "in order to determine whether the best future plan for this child would be either *another* foster home placement or a residential placement with long-range therapy." Thus, even in August 1970 Bureau of Children's Services had apparently reached the conclusion to terminate A. S.'s placement in Little Egg Harbor in favor of "another foster home placement" or a "residential school with long-range therapy." Presumably, her adjustment to her former foster home was unsatisfactory since alternatives were then being sought, a conclusion confirmed by A. S.'s flight from the home within days after this psychological evaluation was made. All of these circumstances compel me to conclude that her foster home placement in Little Egg Harbor had permanently terminated when she fled. Nothing in the record suggests the persistence of any relationship of any kind between A. S. and her former foster parents. The fact that she was never returned to them simply confirms this conclusion.

The parental ties, however, between A.S. and her natural father and mother remain intact. The agreement pursuant to which the parents relinquished custody to the Bureau of Children's Services expressly noted that the parents were not surrendering their parental rights. In addition, the father executed an acknowledgment of responsibility for the support of his child on January 8, 1970 whereby he agreed to contribute financially to the care and maintenance of his child as long as she remained under the jurisdiction of the Bureau of Children's Services. *N. J. S. A.* 30:4C–29.1.

The decision of the Commissioner of Education, adopted by this court as its decision, concluded that the operative fact from which liability for A.S.'s tuition costs flowed was her domicile. *N. J. S. A.* 18A:46–14 was found by the Commissioner and the majority of this court to be controlling:

* * * Whenever any child shall be confined to a hospital, convalescent home or other institution in New Jersey or an adjoining or

nearby State and is enrolled in an education program approved under this article, the board of education of the district in which the child is domiciled shall pay the tuition of said child in the special education program.

*Chapter* 46 of *Title* 18A, which makes provision for classes and facilities for "handicapped children", a term defined to include any "emotionally disturbed" or "socially maladjusted child" (*N. J. S. A.* 18A:46–2), is clearly applicable to A.S. who was diagnosed as being emotionally disturbed and socially maladjusted. *N. J. S. A.* 18A:46–14 provides that tuition costs for a specially placed handicapped child shall be borne by the "board of education of the district in which the child is domiciled." With this conclusion both the Commissioner and the majority of this court agree. So do I.

My disagreement with my colleagues is with respect to the location of A.S.'s domicile. The Commissioner and this court place A.S.'s domicile in the district in which her former foster parents reside, Little Egg Harbor, because she resided with them for over six months. This view is approved by the majority opinion as being "entirely reasonable." The "reasonableness" of this conclusion should not, however, be the governing criterion as to the validity of the State Board of Education conclusion, but rather whether it complies with statutory and decisional requirements. No authority, beyond mere expedience (and about that more later), supported the Board's conclusion, and the statutory references cited in the opinion of the majority are inapposite.

*N. J. S. A.* 30:4C–26 does not apply to the present problem. First, A.S. was not in residence with her former foster parents in Little Egg Harbor during the period of time in which she was attending the Collier School; she resided at the school itself in another school district. Second, *N. J. S. A.* 30:4C–26 insures to foster children the same municipal services available to all other children in the same district; Collier School, however, is not a public, but a private facility, is not located in Little Egg Harbor and is not therefore available to other children residing in that municipality.

*N. J. S. A.* 18A:1-1 defines "residence" to mean domicile, "unless a temporary residence is indicated," thus importing into the term "residence" the more traditional concepts of the term "domicile." Chapter 46, which both the State Board of Education and the majority opinion find controlling, does not speak in terms of "residence," the defined term, but of "domicile" as identifying the school district responsible for tuition costs. At any rate, A.S. was resident, while at the Collier School, in Marlboro Township, at least in the sense of her being present there, and *N. J. S. A.* 18A:1-1 therefore provides no support for placing tuition responsibility on a school district in which the child neither resides nor is domiciled.

*N. J. S. A.* 18A:38-1 and 2, also cited by the majority opinion, merely designates those persons entitled to a free public school education and includes therein those persons for whom the Bureau of Children's Services acts as guardian. No one, not even Little Egg Harbor, disputes that A.S. is entitled to a free public education and that provision would certainly not be applicable. *N. J. S. A.* 18A:46-6 merely requires each board of education to identify and ascertain what handicapped children between the ages of 5 and 20 cannot be accommodated in the local facilities and clearly has no bearing on the problem here presented.

Ordinarily, the domicile of a child is that of the natural father. *Mansfield Tp. Bd. of Ed. v. State Bd. of Ed.,* 101 *N. J. L.* 474 (Sup. Ct. 1925). Although domicile is a flexible concept adaptable to the requirements of a particular context, see, *e. g., Worden v. Mercer Cty. Bd. of Elections,* 61 *N. J.* 325, 344 (1972), and has occasionally been interpreted to mean "residence," research has disclosed no cases, and the majority opinion cites none, in which the domicile of a child is held to be that of a former foster parent who neither supports the child, provides the child with a place to live, nor has any responsibility with respect to the child's care, custody or control. *In Interest of G.H.,* 218 *N. W.* 2d 441 (N. Dak. Sup. Ct. 1974), cited in the majority opin-

ion, is inapposite because decided in a totally different statutory context. The controlling statute in North Dakota "says nothing about residence. It tells only what is to be done if any school district 'has' such a handicapped child." (At 447). Chapter 46 of *Title* 18A, on the other hand, expressly places the burden of tuition costs on the domicile of the child. Second, until the child, G.H., was placed in the residential school she had lived with her natural parents, not with one of two foster parents as in the present case. Third, although the decision and its statutory context are unclear, it appears that the school district in question "contracted" with the special school to provide G.H. with the educational facilities it could not provide. "A contract between a school district and the Crippled Children's School does not change the residence of the child, which remains within the contracting district." The school district embracing Little Egg Harbor did not, however, contract with the Collier School; placement in that school was made by the Bureau of Children's Services.

The circumstances present in this case provide no reason, compelling or otherwise, to depart from the traditional rule identifying the domicile of the child with that of her father, Galloway Township, and that municipality is required by section 14 of *Chapter* 46 to bear the financial burden of A.S.'s special educational placement. Clearly, the nexus between the natural father and A.S., born of blood and continuing family ties together with economic support, is more compelling than the severed relationship between A.S. and her former foster parents who make no contribution, financial or otherwise, even by way of providing her with a place to live.

The rule announced by the Commissioner was apparently designed to serve the convenience of the Department of Education in identifying the district properly chargeable with tuition costs for a nonresident handicapped child receiving special educational services. Apart from its questionable legality for reasons already given, it will not even serve that

limited justifying purpose. The adopted rule imposes tuition costs upon the district in which the child has at any time in the past resided with a foster parent for at least six months, as long as no subsequent placement in a foster home lasted that long. What district, however, pays such expenses when the foster child has not resided in any foster home for the required period of time? What district pays when and if such former foster parents move to another district or leave the State? What district pays if the former foster parents separate, as did A.S.'s natural parents, with both or one moving out of the district or out of the State? The opinion does not say. Nor is it apparent why the district in which the father, or even the mother, is domiciled should be relieved of the responsibility it would normally bear simply because another district, at some time, provides the residence for foster parents with which the child resided for more than six months. The decision below is legally indefensible in my view as well as being arbitrary, capricious and irrational.

I would reverse and remand with instructions to enter judgment requiring the Township of Galloway to pay A.S.'s tuition at the Collier School.